**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOLITA A., o/b/o, VINCENT A., deceased,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 24-04736 (GC)<br><br>**OPINION** |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court upon Lolita A. (Plaintiff)'s appeal on behalf of deceased Claimant Vincent A.[1] (Claimant) from the final decision of the Commissioner of the Social Security Administration (Commissioner)[2] denying Claimant's application for Social Security Disability (SSD) under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. After careful consideration of the entire record, including the entire Administrative Record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's final decision.

---

[1]    Plaintiff and Claimant are identified by first name and last initial. *See* D.N.J. Standing Order 2021-10. Vincent A. is the deceased subject of the disability determination on appeal and Lolita A. is his spouse who was substituted as Plaintiff upon his death.

[2]    Frank Bisignano became Commissioner of the Social Security Administration on May 7, 2025. This change has no bearing on the instant matter. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

I.      **BACKGROUND**

A.      **Procedural Background**

Claimant had an associate's degree and worked as a home health aide and stock clerk.  (AR 79, 101, 257.)[3]  On June 16, 2014, Claimant filed an application for SSD, alleging that he became disabled as of February 3, 2014.  (*Id.* at 219-227, 238.)  Claimant alleged that he could not work because of "heart disease [sic] heart only working at 30%, depression, and short term memory los[s]."  (*Id.* at 241.)  The application was denied on September 24, 2014.  (*Id.* at 138-142.)  Upon reconsideration, Claimant's application was denied again on December 19, 2014.  (*Id.* at 146-148.)  On December 31, 2014, Claimant filed a request for a hearing before an Administrative Law Judge (ALJ).  (*Id.* at 149-150.)  That hearing took place on March 31, 2017.  (*Id.* at 70-106.)

On May 3, 2017, the ALJ issued Claimant an unfavorable decision, finding Claimant not disabled.  (*Id.* at 8-26.)  Claimant requested a review of the ALJ's decision before the Appeals Council, and on April 23, 2018, the Appeals Council denied Claimant's request for review.  (*Id.* at 1-7.)  The ALJ's decision thus became the Commissioner's final decision.  (*Id.*)

On September 12, 2018, Claimant appealed that unfavorable decision to this Court.  (*Id.* at 660-664.)  Upon review, on May 25, 2021, the Court reversed the ALJ's decision and remanded for further proceedings.  (*Id.* at 676-691.)  On December 28, 2021, pursuant to the Court's Order, the Appeals Council vacated the ALJ's 2017 decision and remanded the case back to an ALJ for further proceedings.  (*Id.* at 693-697.)

---

[3]      "AR" refers to the Administrative Record, available at ECF No. 4.  This Opinion cites the internal page numbers when referring to the Administrative Record.  Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Separately, on June 1, 2018, Claimant filed another application for SSD alleging disability as of May 4, 2017. (*Id.* at 695.) The State agency found Claimant disabled as of May 4, 2017 based upon that application. (*Id.*) While remanding the ALJ's unfavorable 2017 decision regarding Claimant's first application with an onset date of February 3, 2014, the Appeals Council also found that the latter finding of disability with an onset date of May 4, 2017 was supported by substantial evidence; the Appeals Council affirmed this latter finding of disability, making it the Commissioner's final decision. (*Id.*) The Appeals Council remanded for further proceedings only the determination of disability for the period from February 3, 2014 until May 4, 2017. (*Id.*) That is the time period now at issue before this Court.

On February 14, 2023, Claimant passed away due to cardiorespiratory arrest, fatal arrhythmia, and coronary artery disease. (*Id.* at 833.) On March 8, 2023 Claimant's widow, Lolita "Lolly" A., filed a Notice Regarding Substitution of Party Upon Death of Claimant and is now the Plaintiff in this action. (*Id.* at 832.) On September 11, 2023, the ALJ conducted an administrative hearing. (*Id.* at 612-623.) On December 27, 2023, that ALJ issued a second unfavorable decision. (*Id.* at 590-611.) The ALJ concluded that although the evidence showed that the Claimant had "moderate limitations" and could not perform past relevant work, he retained the ability to perform "other work that existed in significant numbers in the national economy." (*Id.* at 597, 602-603.) Therefore, the ALJ found that Claimant was "not disabled under sections 216(i) and 223(d) of the Social Security Act" for the period with an onset date of February 3, 2014. (*Id.* at 604.) On February 26, 2024, this decision became the Commissioner's final decision. (ECF No. 1 ¶ 8.)

On April 10, 2024, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff raises four arguments. First, Plaintiff contends that the ALJ's analysis of Claimant's obesity "defies meaningful judicial review at step 3" and "avoid[s] any comment,

analysis or discussion of how obesity was factored in to the RFC[4] in conjunction and combination with heart disease, hypertension, vertigo or even the consideration of obesity all by itself[.]" (ECF No. 7 at 17.)  Second, Plaintiff contends that the ALJ improperly weighed and discounted the medical opinion of Dr. Williamson, the Commissioner's examining psychiatrist.  (*Id.* at 33-36.) Third, Plaintiff argues that the RFC "fails to account for the ALJ's own findings that [Claimant] suffered "moderate limitations" in 3 of the 4 broad areas of mental functioning."  (*Id.* at 36-38.) Lastly, Plaintiff broadly contends that the ALJ failed to explain why he found that Claimant retained the ability to "sustain a 40 hour workweek performing unskilled sedentary work within competitive tolerances." (*Id.* at 30; *see generally id.* at 19-25, 30-32.)

**B.     The ALJ's Decision**

The ALJ used the requisite five-step sequential evaluation process to determine that Claimant was not disabled.  (AR 594-595.)  *See also* 20 C.F.R. § 416.920(a)(4) (describing the five-step process).

At step one, the ALJ found that Claimant met the insured status requirements of the Social Security Act through December 31, 2019, and "did not engage in substantial gainful activity during the period from his alleged onset date of February 3, 2014 through his last date insured."  (AR 595-596.)

At step two, the ALJ found that Claimant "had the following severe impairments:  status post right wrist fracture; coronary artery disease; hypertension; vertigo secondary to sinusitis; obesity, depressive disorder; and anxiety disorder."  (*Id.* at 596.)  The ALJ noted that these medically determinable, severe impairments "significantly limit the [C]laimant's ability to perform

---

[4]     Residual functional capacity (RFC) is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

basic work activities." (*Id.*) The ALJ found that Claimant's had another impairment, hyperlipidemia, which was not severe. (*Id.*) The ALJ noted that he "considered all of the [C]laimant's medically determinable impairments, including those that are not severe, when assessing the [C]laimant's residual functional capacity." (*Id.*)

At step three, the ALJ found that none of Claimant's impairments nor any combination of impairments met or medically equaled the severity of any of the impairments listed in the applicable regulation. (*Id.* at 596-598.) *See also* 20 C.F.R. § 416.925(a) (regulation pointing ALJs to "appendix 1 of subpart P of part 404 of this chapter").

At step four, the ALJ conducted an RFC assessment to determine whether Claimant could perform the requirements of his past relevant work. (*Id.* at 598-602.) The ALJ concluded that Claimant:

> had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), with exceptions. The claimant could never climb ropes, ladders, or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally kneel; occasionally stoop and crouch; do frequent fingering and handling; occasionally balance; and never have exposure to extremes in vibration, environmental conditions or concentrated pulmonary irritants. The claimant could have occasional contact with supervisors, co-workers, and the public; and was able to do only simple and routine tasks.

(*Id.* at 598-599.) To arrive at this conclusion, the ALJ stated that he "considered all [of Claimant's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* at 599 (citing 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claims), 2017 WL 5180304 (Oct. 25, 2017)).) The ALJ also considered "opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527." (*Id.*)

In considering Claimant's symptoms, the ALJ stated that he must follow a two-step process. (*Id.*) First, the ALJ must determine whether "there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the [C]laimant's pain or other symptoms." (*Id.*) Second, if there is such an impairment, the ALJ must then evaluate "the intensity, persistence, and limiting effects" of the symptoms "to determine the extent to which they limit the [C]laimant's work-related activities." (*Id.*)

Applying these standards, the ALJ reviewed the record and found step one satisfied. (*Id.*) The ALJ then proceeded to step two and found that "to the extent that the [C]laimant alleges that the intensity, persistence, and limiting effects of his conditions resulted in disability during the time relevant to this decision, this is not consistent with the evidence in the record." (*Id.*)

The ALJ then discussed the objective medical evidence he considered in his RFC assessment. (*Id.* at 599-601.) The ALJ found that "the objective medical evidence of record regarding the [C]laimant's impairments supports a finding that the claimant is limited to sedentary work, subject to the additional limitations specified in the residual functional capacity finding above." (*Id.* at 601.) Subsequently, the ALJ discussed the role that opinion evidence played in his RFC assessment. (*Id.* at 601.) The ALJ found the opinion of DDS consultants merited "partial weight." (*Id.*) The ALJ found Dr. Williamson's (Commissioner's examining psychiatrist) opinion that Claimant's "overall prognosis remained guarded due to the chronicity and severity of his symptoms, which appeared to be genuine and debilitating" to have "little weight" and "not consistent with the overall record" because "[t]he record reflects that as of April 11, 2016, anxiety was better controlled at home" and "according to the [C]laimant's function report, his conditions did not adversely affect his ability to get along with others." (*Id.*) The ALJ found the opinion of Dr. Jeffrey Gelderen (Claimant's orthopedist) to also merit "little weight" because the report was

made before the alleged onset date. (*Id.*) Lastly, Claimant's mother submitted a third-party function report to which the ALJ gave "appropriate weight" given that "[d]ue to the personal connection with the [C]laimant, it is difficult to provide an objective review of the claimant's limitations." (*Id.*)

The ALJ based his RFC assessment on the above considerations and concluded that Claimant "was unable to perform any past relevant work." (*Id.* at 602.) The ALJ stated that "the demands of the [C]laimant's past relevant work" as a caregiver, "as actually performed and as generally performed in the national economy, exceed the [C]laimant's residual functional capacity." (*Id.*)

Finally, at step five, the ALJ considered whether jobs exist in the national economy that Claimant could perform given his age, education, work experience, and RFC results. (*Id.* at 602-603.) Based on hypothetical questions posed by the ALJ, a vocational expert testified that Claimant could perform jobs such as "scale operator," "table worker," and "final assembler." (*Id.* at 603.) The ALJ determined that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. (*Id.*) Therefore, the ALJ concluded that Claimant "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (*Id.*) As a result, the ALJ concluded that Claimant was not disabled for SSD purposes. (*Id.* at 603-604.)

## II.    LEGAL STANDARD

### A.    Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted). Instead, the Court must "scrutinize the record as a whole to determine

whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 775-76 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Legal issues, in contrast, are subject to a plenary or de novo review. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . .") (quoting *Chandler*, 667 F.3d at 359).

## B. Determining Disability

To be eligible for SSD due to disability under the Social Security Act, a claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in

the region where the individual lives or in several regions of the country. 42 U.S.C. § 1382c(a)(3)(B); *Plummer*, 186 F.3d at 427-28. A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Disability determinations are made individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

### C.    Sequential Evaluation

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims. The process considers whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). "The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the ultimate burden of proof at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.") (citation omitted).

## III.    DISCUSSION

Plaintiff makes four arguments in support of her appeal. First, she argues that the ALJ failed to meaningfully consider Claimant's obesity at step three and when assessing the RFC. Second, Plaintiff contends that the ALJ improperly weighed the medical opinion of the

Commissioner's examining psychiatrist, who found Claimant disabled.  Third, Plaintiff argues that the RFC fails to account for Claimant's moderate limitations in mental functioning.  Lastly, Plaintiff broadly asserts that the ALJ failed to explain why Claimant could sustain a 40-hour workweek performing sedentary work.[5]  On review of the ALJ's decision (*see* AR 590-611) and the Administrative Record (*see generally* ECF No. 4), the Court finds good cause to affirm the Commissioner's decision.

---

[5]      Plaintiff also argues the ALJ erred in finding Claimant was not disabled from February 3, 2014 until December 31, 2019.  (ECF No. 7 at 26-29.)  Plaintiff contends this is error because the Appeals Council only remanded to the ALJ the consideration of disability for the period from February 3, 2014 to May 4, 2017 and a separate proceeding already determined Claimant was disabled as of May 4, 2017, which is before the December 31, 2019 end date noted by the ALJ in the decision at issue here.  (*See id.* at 28.)  The Court finds any such error harmless.  "In the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent."  *Mary L. v. Kijakazi*, Civ. No. 20-14158, 2022 WL 1058370, at *7 (D.N.J. Apr. 8, 2022) (quoting *Amy A. v. Kijakazi*, Civ. No. 20-7655, 2021 WL 5864063, at *5 (D.N.J. Dec. 10, 2021)); *see also Mark R. v. O'Malley*, Civ. No. 22-0379, 2024 WL 772550, at *9 (D.N.J. Feb. 26, 2024) (finding scrivener's error where ALJ stated claimant's RFC limited him to light work when finding claimant unable to perform past relevant work, but earlier in step four ALJ had concluded claimant could perform medium work and "it is clear from the transcript and from the ALJ's hypothetical posed to the vocational expert that the ALJ intended to limit Plaintiff to a limited range of medium work").  Here, the Affirmation and Order of the Appeals Council is clear on the time period remanded for the ALJ's consideration.  The Appeals Council specified that it affirmed the agency's determination that Claimant was disabled as of May 4, 2017 but "the period prior to May 4, 2017 requires further adjudication" and the ALJ would "complete the administrative record and issue a new decision for the period prior to May 4, 2017."  (AR 695.)  Neither party disputes that February 3, 2014 to May 4, 2017 is the time period at issue.  A "full and fair reading" of the ALJ's decision, *Mark R.*, 2024 WL 772550, at *9, shows that the ALJ understood and intended to only decide disability for that specified time period.  (AR 593 ("The alleged onset date of disability is February 3, 2014. Per the remand order, the time period under adjudication is from the alleged onset date to May 4, 2017.").)  Thus, there is no harm from this error.  The ALJ's finding that Claimant was not disabled from February 3, 2014 through December 31, 2019, the date last insured, does not impact Claimant's separate disability determination from May 4, 2017 onward.  *See Nieves v. Comm'r of Soc. Sec.*, 198 F. App'x 256, 260 n.3 (3d Cir. 2006) ("Our determination [that the ALJ's decision denying claimant's application for disability insurance benefits for a period beginning in January 2001 was based on substantial evidence] is in no way swayed by the fact that in October of 2003 an ALJ determined that the petitioner was disabled.  As per 42 U.S.C. § 405(g), our review is limited to the evidence in the record at the time of the 2001 decision of the ALJ and we are therefore not required, nor able, to consider this subsequent ALJ ruling when rendering our decision.").

A.    The ALJ's Consideration of Claimant's Obesity

Plaintiff argues that the ALJ did not meaningfully consider Claimant's obesity independently at step three or in combination with his other impairments when evaluating Claimant's RFC.  (ECF No. 7 at 8-19.)  Plaintiff contends that where the ALJ did discuss Claimant's obesity, that discussion includes only "pre written template culled from the Commissioner's decision-writing catalog of boilerplate," (*id.* at 17), contrary to the "meaningful consideration" required by the Third Circuit decision *Diaz v. Commissioner of Social Security*, 577 F.3d 500 (3d Cir. 2009), (*id.* at 11-12.)  Defendant responds that the ALJ properly accounted for Claimant's obesity at step three and in assessing the RFC.  (ECF No. 11 at 11-17.)  Additionally, Defendant argues that even assuming *arguendo* that the ALJ failed to properly consider Claimant's obesity at step three, Plaintiff has not met her burden to show that any error was harmful.  (*Id.* at 13-14.)  Further, Defendant contends that *Diaz* is inapplicable or, in the alternative, distinguishable from this case as the ALJ in *Diaz* did not offer any discussion of obesity, unlike the ALJ here.  (*Id.* at 15-16.)

Social Security Ruling (SSR) 19-2p[6] provides guidance on how to evaluate obesity in disability claims.  *See* Social Security Ruling (SSR) 19-2p (Evaluating Cases Involving Obesity), 2019 WL 2374244 (May 20, 2019).  "Obesity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, either alone or in combination with another impairment(s), may medically equal a listing."  *Id.* at *2.  However, SSR 19-2p disclaims that "[w]e will not make general assumptions about the severity or functional effects of obesity

---

[6]     This SSR rescinded and replaced the earlier SSR 02-1p (Evaluation of Obesity), 2002 WL 34686281 (Sept. 12, 2002), which in turn had rescinded and replaced SSR 00-3p (Evaluation of Obesity), 2000 WL 33952015 (May 15, 2000).  To the extent Plaintiff cites either SSR 02-1p and 00-3p, they are not controlling.  (ECF No. 7 at 9-13.)

combined with another impairment(s)" and clarifies that "[w]e evaluate each case based on the information in the case record." *Id.* at *4.

In *Diaz*,[7] the plaintiff argued that the ALJ's decision was not supported by substantial evidence because the ALJ did not consider her severe obesity. 577 F.3d at 503. The Third Circuit held that:

> [Because the SSR] instructs that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. . . . an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step."

*Id.* at 504 (quoting SSR 00-3p, 2000 WL 33952015). While there are no "magic" words an ALJ must employ, the ALJ "must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review." *Id.* (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)).

"[W]hen an ALJ 'explicitly contemplate[s] . . . obesity at the appropriate step (i.e., when assessing [a plaintiff's] RFC),' the ALJ meets the burden imposed by *Diaz*." *Maria A. v. Comm'r of Soc. Sec.*, Civ. No. 21-19431, 2025 WL 88349, at *8 (D.N.J. Jan. 13, 2025) (quoting *Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015). In *Diaz*, the Third Circuit remanded the ALJ's

---

[7]     Defendant argues that *Diaz* is inapposite as it discussed and applied SSR 00-3p, one of the prior SSRs regarding obesity that has since been rescinded. (ECF No. 11 at 15.) While *Diaz* does apply the then-controlling SSR 00-3p, the now-controlling SSR 19-2p applicable in this case still requires consideration of the limiting effects of obesity when assessing a claimant's RFC, 2019 WL 2374244, at *4, which is the same issue discussed in *Diaz*. 577 F.3d 503-04; *see also Jesus O. v. O'Malley*, Civ. No. 22-5637, 2024 WL 4318604, at *12 (D.N.J. Sept. 26, 2024) ("Other courts have observed that SSR 02-1p and SSR 19-2p 'are largely consistent in their discussion of how obesity should be analyzed[.]'") (quoting *Heck v. Comm'r of Soc. Sec. Admin.*, Civ. No. 20-2133, 2021 WL 6693720, at *10 (N.D. Ohio Dec. 28, 2021), *report and recommendation adopted sub nom. Heck v. Comm'r of Soc. Sec.*, Civ. No. 20-2133, 2022 WL 228163 (N.D. Ohio Jan. 26, 2022) (collecting cases)).

determination for further proceedings because the ALJ determined that claimant's obesity was a severe impairment but did not analyze its impact on her workplace performance. *Diaz*, 577 F.3d at 504-05. However, "[w]ere there *any* discussion of the combined effect of [the claimant's] impairments," the outcome may have been different. *Id.* at 504 (emphasis in original).

Here, unlike the decision in *Diaz*, the ALJ meaningfully considered Claimant's obesity independently and in combination with his other impairments. In his application, Claimant did not list obesity as a condition that limited his ability to work. (AR 241.) Nevertheless, the ALJ first discussed Claimant's obesity at step two, when he determined it was a severe impairment that "significantly limit[s] the [C]laimant's ability to perform basic work activities." (*Id.* at 596.) At step three, in considering whether Claimant's impairments met or medically equaled the severity of any of the listed impairments, the ALJ specifically discussed obesity. (*Id.* at 597.) Obesity may put claimants at higher risk for other impairments and "is often associated with musculoskeletal, respiratory, cardiovascular, and endocrine disorders." SSR 19-2p, 2019 WL 2374244, at *3. The ALJ "closely considered" relevant listings to the risks associated with obesity, such as 1.18 (Abnormality of a major joint(s) in any extremity) and 4.04 (Ischemic heart disease). (AR 596-597.) He concluded:

> With respect to Listing 1.18, the record does not document abnormality of a major joint(s) in any extremity, documented by: (a) chronic joint pain or stiffness; (b) abnormal motion, instability, or immobility of the affected joint(s); (c) anatomical abnormality of the affected joint(s) under the criteria of Listing 1.18C; and (d) impairment-related physical limitation of musculoskeletal functioning under the criteria of Listing 1.18D.
>
> With respect to Listing 4.04, although the claimant has heart disease, the record does not document the results from exercise tolerance testing per 4.04A, nor three separate ischemic episodes, nor coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging.

(*Id.* at 596-597.)  The ALJ then noted that obesity "may be a factor in both 'meets' and 'equals' determinations" of listed impairments and concluded "even when obesity is considered in combination with the claimant's other impairments, the claimant does not meet or equal any of the listings in Appendix 1, Subpart P, Regulations No. 4." (*Id.* at 597.)

When discussing the Claimant's impairments at step four, the ALJ concluded that "[w]ith respect to the [C]laimant's status post right wrist fracture; coronary artery disease; hypertension; vertigo secondary to sinusitis; *obesity*; depressive disorder; and anxiety disorder, *the record reflects that these are severe impairments, and the claimant has some resulting limitations*, which are reflected in the above residual functional capacity finding." (*Id.* at 599 (emphasis added).)  The ALJ also discussed the medical evidence that led to this conclusion, including evidence of Claimant's Body Mass Index (BMI):

> As of February 10, 2015, the [C]laimant . . . was 65 inches tall, weighed 245 pounds, and BMI was 40.86.[8] . . . As of October 24, 2016, the [C]laimant . . . was 5 feet 6 inches tall, weighed 250 pounds, and BMI was 40.3. . . . As of February 28, 2017, the [C]laimant . . . weighed 252 pounds and BMI was 42.02.

(*Id.* at 600.)  As such, the Court finds that, considering the ALJ's decision as a whole, the ALJ properly considered Claimant's obesity.  Furthermore, "[a]n ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that he has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec.*, Civ. No. 13-781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v.*

---

[8]    The medical records note that Claimant's BMI was "above the upper parameter" during visits in 2015, 2016 and 2017.  (*See, e.g.*, AR 535, 549, 552, 555, 949.)  Plaintiff notes that "the BMI of 40 and above is obesity 'class III' representing an 'extremely high' disease risk," (ECF No. 7 at 13 n.2), Defendant does not dispute this classification.

*Comm'r of Soc. Sec.,* 268 F. App'x 186, 189 (3d Cir. 2008)).  Here, the ALJ expressly indicated he did as much at steps two, three and four.  (AR 596-600.)

Even assuming *arguendo* that the ALJ did not properly consider Claimant's obesity, Plaintiff has demonstrated no prejudicial error requiring remand.  "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals. [The plaintiff] therefore must '*explain* [ ] . . . how the . . . error to which he points could have made any difference.'"  *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (second alteration in original) (quoting *Shinseki v. Sanders,* 556 U.S. 396, 409, 413 (2009)). Plaintiff does not identify any evidence in the record that the ALJ disregarded evidence supporting that Claimant's obesity, alone or in conjunction with other impairments, met or medically equaled the severity of a listed impairment.  "[C]ourts in this Circuit have regularly rejected challenges to an ALJ's consideration of a claimant's obesity at step three where the plaintiff fails to demonstrate how further consideration of [his] obesity would have changed the ALJ's ultimate determination that [he] was not entitled to benefits."  *Maria A.*, 2025 WL 88349, at *7 (collecting cases).  Instead, Plaintiff recounts the history of Social Security Rulings regarding obesity, states that the effect of claimant's obesity must be "meaningfully considered," and takes issue with the ALJ's "boilerplate" discussion.[9]  (ECF No. 7 at 8-19.)  But the general argument "that a plaintiff's weight would necessarily limit [his] functional abilities without explaining *how* obesity would affect the ALJ's analysis" is insufficient to meet Plaintiff's burden.  *Maria A.*, 2025 WL 88349, at *9.  It "is

---

[9]    This Court can conduct a meaningful review from the ALJ's decision as a whole.  *Maria A.*, 2025 WL 88349, at *7 n.5.  "And regardless, an ALJ is not required 'to use particular language . . . in conducting [the] analysis.'"  *Id.* (quoting *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004)).

particularly insufficient when the ALJ relied on medical evidence from physicians who were aware of the plaintiff's obesity," *id.*, as the ALJ did here, (AR 599-600).

### B.    The ALJ's Evaluation of Medical Opinion Evidence

Plaintiff argues that the ALJ improperly weighed the opinion of Dr. Williamson, the Commissioner's examining psychiatrist.  (ECF No. 7 at 33-36.)  Plaintiff does not challenge the ALJ's weighing of the other medical opinions in the record.  Plaintiff argues that the ALJ's decision to give "little weight" to Dr. Williamson's opinion that Claimant's symptoms were chronic, severe, genuine and debilitating was improper because Dr. Williamson's opinion was consistent with the record.  (*Id.* at 34-35.)  Defendant responds that Plaintiff's argument "is merely a request to reweigh the evidence, contrary to the deferential standard of review" and this Court may reverse the Commissioner's decision "only if the evidence '*compels*' reversal, not merely because the evidence supports a contrary decision."  (ECF No. 11 at 19 n.4 (emphasis in original).)

"When weighing medical opinions in Social Security matters, administrative law judges must *consider* a range of factors, but all they must *explain* are the reasons for their decisions." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 638 (3d Cir. 2024) (emphasis in original). Under 20 C.F.R. § 404.1520c(a), for claims filed after March 27, 2017, an ALJ is required to consider medical opinions and determine persuasiveness of the opinions by considering specific factors listed in the regulations.  These factors include: (1) supportability; (2) consistency; (3) relationship of the medical source to the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship; (4) specialization; and (5) other relevant factors.  20 C.F.R. § 404.1520c(c).

Supportability[10] and consistency[11] are the most important factors.  20 C.F.R. § 404.1520c(b)(2).

Accordingly, an ALJ must "explain how [he] considered [these two] factors" but need not "explain

how [he] considered" the other factors." *Id.*

When giving this explanation, the ALJ "need not reiterate the magic words 'support' and

'consistent' for each doctor." *Zaborowski*, 115 F.4th at 639.  Rather, it is sufficient for the ALJ to

"weave supportability and consistency throughout [his] analysis of which doctors were

persuasive." *Id.*  And when conducting this analysis, the ALJ is not required to provide a "written

analysis about how [he] considered each piece of evidence." *Joseph P. v. Comm'r of Soc. Sec.*,

Civ. No. 21-13524, 2023 WL 1929945, at *5 (D.N.J. Feb. 10, 2023) (quoting Revisions to Rules

Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017)).

Instead, "[t]he new regulations reflect a 'reasonable articulation standard'" in which the "decision

need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.'" *Id.*

(quoting 82 Fed. Reg. 5844-01, at 5858).  At the same time, the Court "need[s] from the ALJ not

only an expression of the evidence [he] considered which supports the result, but also some

indication of the evidence which was rejected." *David T. v. Kijakazi*, Civ. No. 20-9118, 2022 WL

---

[10]    "Supportability" means that the "more relevant the objective medical evidence and
supporting explanations presented by a medical source are to support his or her medical opinion(s)
or prior administrative medical finding(s), the more persuasive the medical opinions or prior
administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); *see also Zaborowski*, 115
F.4th at 639 (describing the "supportability" factor as an inquiry into "whether medical opinions
were [] based on 'objective medical evidence and supporting explanations'").

[11]    "Consistency" means that the "more consistent a medical opinion(s) or prior administrative
medical finding(s) is with the evidence from other medical sources and nonmedical sources in the
claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will
be." 20 C.F.R. § 404.1520c(c)(2); *see also Zaborowski*, 115 F.4th at 639 (describing the
"consistency" factor as an inquiry into "whether medical opinions were . . . consistent with other
medical opinions in the record").

17

73498, at *2 (D.N.J. Jan. 7, 2022) (quoting *Cotter v. Harris*, 642 F.2d 700, 705-06 (3d Cir. 1981)).

Here, Plaintiff challenges only the ALJ's consistency analysis.  (ECF No. 7 at 34.)

The ALJ's opinion sufficiently explains how Dr. Williamson's opinion is inconsistent with the record, thereby giving it little weight.  Dr. Williamson opined that Claimant's "overall prognosis remained guarded due to the chronicity and severity of his symptoms, which appeared to be genuine and debilitating in nature."  (AR 601.)  The ALJ articulated that Dr. Williamson's opinion merited "little weight" because:

> These opinions are based on a one-time examination, and these opinions are not consistent with the overall record. The record reflects that as of April 11, 2016, anxiety was better controlled at home; but he felt anxious about working, was unable to focus, and was concerned about his stamina (Exhibit 11F at 1). Anxiety was noted to be stable (Exhibit 11F at 2). Also, according to the claimant's function report, his conditions did not adversely affect his ability to get along with others (Exhibit 5E at 6).

(*Id.* at 601.)  Plaintiff claims that Dr. Williamson's opinion was consistent with the overall record and should have been given greater weight.  But "a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. In other words, even if the reviewing court would have decided the case differently, the ALJ's decision must be affirmed if it is supported by substantial evidence."  *Hyer v. Colvin*, 72 F. Supp. 3d 479, 490 (D. Del. 2014) (citation omitted).

Here, substantial evidence supports the ALJ's conclusion.  The ALJ cited to examples in the record demonstrating that while Claimant experienced symptoms of anxiety and depression, those symptoms were managed and did not prevent Claimant from getting along with others.  (AR 601 (citing to statements from Claimant's function report (Ex. 5E, AR 265-272) and Office Visit Notes from Claimant's primary care provider (Ex. 11F, AR 533-556).)  Further, the ALJ cited to Dr. Williamson's own treatment notes which recounted Claimant's abilities, finding:  "there was

no evidence of a formal thought disorder"; Claimant's knowledge and abstract reasoning abilities were "intact" and "in the average range" and Claimant could "perform simple addition and subtraction." (*Id.* at 600.) *See Sheare v. Berryhill*, Civ. No. 17- 1227, 2018 WL 4225059, at *10-11 (M.D. Pa. June 22, 2018) (finding that ALJ appropriately assigned little weight to doctor's opinion because it was contrary to the record and "[the doctor's own] treatment notes do not include clinical observations that suggest that [the claimant] was as restricted to the extreme limitations that the [doctor's] medical source statement suggests"), *report and recommendation adopted*, Civ. No. 17-1227, 2018 WL 4219386 (M.D. Pa. Sept. 5, 2018).

Plaintiff, relying on *Nazario v. Commissioner Social Security*, also argues that the ALJ may not "reject[] evidence or mak[e] findings on the basis of 'stability' of impairments." (ECF No. 7 at 35-36.) However, this case does not present the same deficiencies the Third Circuit found in *Nazario*. In *Nazario*, the Third Circuit remanded to award the claimant benefits because it found that the ALJ's decision was not supported by substantial evidence; the ALJ determined the claimant was not disabled in part because of a treating doctor's note that the claimant's condition was "stable." 794 F. App'x at 209, 211. The Third Circuit found that the ALJ had relied on this comment while ignoring other conflicting, probative evidence about claimant's impairments, some of which was also included in notes from that same doctor. *Id.* at 210-11. Here, the ALJ considered the entire record in evaluating the consistency of Dr. Williamson's opinion. The ALJ acknowledged that Claimant reported to his primary care provider that he "felt anxious about working" and "was unable to focus" in addition to noting the provider's finding that Claimant's anxiety was stable. (AR 601.) The ALJ also considered Claimant's function report in which Claimant self-reported that his impairments did not adversely affect his ability to get along with others. (*Id.*) And unlike in *Nazario*, the ALJ here found that Claimant had "severe impairments"

of depressive disorder and anxiety disorder and included relevant limitations in the RFC.  (*Id.* at 596, 599.)  *See also Bonnie Lou B. v. Comm'r of Soc. Sec.*, Civ. No. 21-18157, 2022 WL 18024211, at *8 (D.N.J. Dec. 30, 2022) ("[U]nlike *Nazario*, the ALJ found that [p]laintiff here did have an impairment, Alzheimer's Disease, but the impairment did not significantly limit [p]laintiff's ability to perform basic-work related activities during the relevant time period."); *Kelly P. v. Kijakazi*, Civ. No. 20-14535, 2023 WL 5321033, at *19 (D.N.J. Aug. 18, 2023) ("[T]he fact that a claimant is "stable and well controlled with medication" does not necessarily establish that a claimant can return to work. . . . [But u]nlike the reasoning of the ALJ in *Morales* [and *Nazario*], . . . the ALJ's 'finding was based on the objective medical evidence contained in the psychotherapy treatment notes, and is not 'overwhelmed' by contrary evidence in the record.'") (citations omitted); *John P. v. Kijakazi*, Civ. No. 20- 8455, 2022 WL 2314966, at *16 (D.N.J. June 28, 2022) (finding "the fact that [the p]laintiff's symptoms were characterized as 'stable' on medication was only one factor that [the ALJ] identified when explaining why he discounted the more extreme opinions of [other doctors]" and holding that the ALJ's weighing of these medical opinions was properly based on objective medical evidence in the record).  Therefore, because the ALJ's analysis complied with the applicable regulations and his conclusions are supported by substantial evidence, the ALJ's evaluation of Dr. Williamson's opinion was proper.

### C.    The ALJ's Consideration of Claimant's Moderate Limitations in Mental Functioning

Plaintiff also argues that the RFC fails to account for the ALJ's finding that the Claimant suffered from "moderate limitations" in mental functioning caused by his severe impairments identified and discussed in steps two and three.  (ECF No. 7 at 36-38.)  Defendant responds that the ALJ sufficiently articulated his reasoning, and the RFC is supported by substantial evidence. (ECF No. 11 at 17-24.)  Defendant contends that the ALJ specifically accounted for Claimant's

moderate mental limitations and "an ALJ's finding on the broad areas of mental functioning does not categorically bind the ALJ in terms of the mental RFC assessment." (*Id.* at 22-23.)  The Court agrees with Defendant that the ALJ accounted for Claimant's moderate limitations, by imposing a "simple tasks" limitation in the RFC.

First, "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three." *Hess*, 931 F.3d at 209.  Findings that a claimant has functional limitations in steps two or three are relevant to the RFC determination but do not require the use of any particular language; the ALJ must only explain how the RFC reflects what a claimant can do despite those identified limitations. *Id.* at 209-10.  "[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Id.* at 211.  A "simple tasks" limitation "relate[s] to [a claimant's] mental abilities necessary to perform 'unskilled work.'" *Id.* at 210.

In *Hess*, the Third Circuit found that an RFC limiting a claimant "to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions" was a "simple tasks" limitation that appropriately accounted for the claimant's moderate difficulties in concentration, persistence or pace. *Id.* at 210.  Similarly, here the ALJ found that Claimant had moderate limitations in "understanding, remembering, or applying information"; "interacting with others"; and "concentrating, persisting, or maintaining pace." (AR 597-598.)  In the RFC, the ALJ concluded that Claimant "could have occasional contact with supervisors, co-workers, and the public; and was able to do only simple and routine tasks." (*Id.* at 599.)  This is a "simple tasks" limitation appropriately addressing Claimant's mental abilities to perform unskilled work. *See Hess*, 931 F.3d at 210-11.

21

The ALJ offered a valid explanation for the "simple tasks" limitation included in the RFC. To reach this conclusion regarding Claimant's abilities given his "moderate limitations" in mental functioning, the ALJ first considered the examination notes from Dr. Williamson, which indicated that: "there was no evidence of a formal thought disorder"; Claimant's "overall fund of knowledge appeared to be in the average range; abstract reasoning appeared to be in the average range; abstract reasoning appeared intact; he was well oriented to time, place, and person, as well as recent current events"; and Claimant "could repeat up to 2 digits forward and 2 digits backwards" and "perform simple addition and subtraction." (AR 600.) The ALJ found Dr. Williamson's overall opinion— that Claimant's "prognosis remained guarded due to the chronicity and severity of his symptoms, which appeared to be genuine and debilitating in nature"—inconsistent given those observations and the overall record, and assigned it little weight. (*Id.* at 601.) The ALJ also considered more recent treatment notes from Claimant's primary care provider. (*Id.*) Those treatment notes indicated that Claimant was anxious about working and reported difficulty with focus but his anxiety was noted to be stable. (*Id.* at 601.)

The ALJ also considered and weighed other opinion medical evidence. He assigned partial weight to the DDS consultants' findings that Claimant had "moderate difficulties in maintaining concentration, persistence or pace" because the consultants did not have the benefit of the latest medical evidence, nor did they incorporate the entirety of Claimant's limitations. (*Id.*) After examining this evidence, the ALJ concluded that "to the extent that the [C]laimant alleges that the intensity, persistence, and limiting effects of his conditions resulted in disability during the time relevant to this decision, this is not consistent with the evidence in the record." (*Id.* at 599.) The ALJ thus concluded that Claimant was limited to sedentary work, with a "simple tasks" limitation. (*Id.* at 598-599, 601.) Based on the Court's review, the ALJ offered a valid explanation for

imposing the "simple tasks" limitation and properly addressed Claimant's moderate limitations in mental functioning. *See Hess*, 931 F.3d at 213-14 (finding ALJ offered a valid explanation for imposing simple tasks limitation where ALJ highlighted record evidence that "led her to give little weight to assertions that [the claimant] had serious mental difficulties and to credit evidence that [the claimant] could perform simple work").

**D.    The ALJ's Discussion of the RFC**

Plaintiff also makes a sweeping assertion that the ALJ failed to explain why Claimant retained the ability to "sustain a 40 hour workweek performing unskilled sedentary work within competitive tolerances." (ECF No. 7 at 30; *see generally id.* at 19-25, 30-32.) In making this argument, Plaintiff does not raise specific challenges to the RFC apart from the arguments the Court has already addressed, but to the extent Plaintiff's intention is to challenge the RFC more broadly, the Court rejects this argument.

"[A]n 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion.'" *Maria A.*, 2025 WL 88349, at *14 (quoting *Harris v. Comm'r of Soc. Sec.*, Civ. No. 09-3219, 2010 WL 2874352, at *6 (D.N.J. July 19, 2010)). However, "an ALJ does not need to use particular language or adhere to a particular format in conducting [his] RFC analysis" but rather "must merely 'articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (first quoting *Lorie H. v. Comm'r of Soc. Sec.*, Civ. No. 20-13192, 2022 WL 2803168, at *6 (D.N.J. July 18, 2022) (citations omitted); then quoting *Hernandez-Flores v. Comm'r of Soc. Sec.*, Civ. No. 13-4738, 2015 WL 4064669, at *6 (D.N.J. July 1, 2015) (citation omitted)).

Plaintiff argues that contrary to the requirements in the Commissioner's Rulings, the ALJ failed to assess Claimant's work-related abilities on a function-by-function basis. (ECF No. 7 at

32-33 (citing SSR 96-8p (Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims), 1996 WL 374184, at *1 (July 2, 1996)).) The ALJ is not held to such a strict standard. "Though S.S.R. 96-8p requires that functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling, 'must be considered,' in the RFC calculation, it does not require every function to be specifically delineated in the RFC." *Maria A.*, 2025 WL 88349, at *17. Here, the ALJ properly addressed Claimant's work-related abilities in the RFC, and his determination is supported by a narrative discussion.

The ALJ discussed Claimant's medical history, self-reported abilities, medical opinions of consultative examiners and other record evidence. (*Id.* at 599-601.) The ALJ's analysis referenced evidence specifically relevant to "sedentary work."[12] The ALJ considered medical evidence in the record evaluating Claimant's ability to lift 10 pounds, including a report from one of Claimant's doctors as well as opinion evidence from the DDS consultants. (*Id.* at 601.) With respect to Claimant's ability to walk, stand and sit, the ALJ considered Claimant's 2014 function report, where he described difficulty with lifting, squatting, walking and standing but not with sitting. (*Id.*

---

[12]    The SSA defines "sedentary work" as work that:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). SSR 83-10 additionally provides that "[b]y its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. . . . Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10 (Titles II and XVI: Determining Capability to Do Other Work--the Medical-Vocational Rules of Appendix 2), 1983 WL 31251, at *5 (Jan. 1, 1983).

at 599 (citing Ex. 5E, AR 265-272).) The ALJ also considered medical evidence indicating that Claimant had become more active as of 2016 and reports of Claimant's weight and BMI throughout the relevant time period. (*Id.* at 599-600.) With respect to Claimant's ability to use his hands and fingers, the ALJ cited to medical reports which indicated that after Claimant's right wrist fracture "[n]eurologically, vascular function was intact in all digits," (*id.* at 600) and Claimant's function report where he indicated that he did not have trouble with seeing or using his hands. (*Id.* at 599 (citing Ex. 5E, AR 265-272).) As previously discussed, the ALJ also considered and referenced evidence regarding Claimant's mental abilities. (*See supra* Section III.C.) Thus, the ALJ sufficiently articulated how the evidence in the record supported the RFC determination. *See Maria A.*, 2025 WL 88349, at \*14. "The fact that the ALJ did not engage in a formulaic explanation of [his] RFC decision in the way Plaintiff suggests does not indicate that [his] decision was not supported by substantial evidence." *Id.* at \*18.

## IV.   **CONCLUSION**

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **AFFIRMED**. An appropriate Order follows.


Dated: January 29, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE